UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANGELA HALEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:18-cv-00400 |
| | ) CHIEF JUDGE CRENSHAW |
| CLARKSVILLE-MONTGOMERY | ) |
| COUNTY SCHOOL SYSTEM, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Angela Haley, the former wrestling coach at Northeast High School, in Clarksville, Tennessee, brings this action arising out of (1) the Clarksville-Montgomery County School System's ("CMCSS") decision to replace her in that position with a male coach, and (2) dissatisfaction with CMCSS's treatment of female student-athletes. Haley brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1983; and Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). Before the Court is CMCSS' Motion to Dismiss certain claims pursuant to Federal Rule of Procedure 12(b)(6). (Doc. No. 8.) Haley has responded in opposition (Doc. Nos. 13-14), and CMCSS has replied (Doc. No. 19). For the following reasons, the Motion will be granted.

I.     Legal Standard

To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[1] The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (citation and brackets omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007). In deciding a motion to dismiss, the court is not required to accept summary allegations, legal conclusions, or unwarranted factual inferences. Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999); Lillard v. Shelby Cty. Bd. of Educ., 76 F.3d 716, 726 (6th Cir. 1996).

II. Factual Allegations

CMCSS operates the public school system in Montgomery County, Tennessee. (Doc. No. 1 at ¶ 13.) Haley, a resident of Stewart County, Tennessee, is employed by CMCSS at Northeast High School ("Northeast") in Clarksville, Tennessee. (Id. at ¶ 12.) According to the Complaint, CMCSS hired Haley as the Northeast wrestling coach, and Haley "was instrumental in getting wrestling sanctioned as a state sport within Tennessee." (Id. at ¶ 38.) According to Haley, she "had a very good track record" as a wrestling coach with CMCSS. (Id. at ¶ 39.) Haley sat on the board

---

[1] Both parties rely, at least in part, on the famous "no set of facts" language from Conley v. Gibson, 355 U.S. 41 (1957), in explaining the motion to dismiss legal standard. However, more than a decade ago the Supreme Court jettisoned reliance on that language in favor of the formulation it clarified in Twombly. References to Conley's "no set of facts" language are therefore outdated and unhelpful. See, e.g., Twombly, 550 U.S. at 562-63 ("We could go on, but there is no need to pile up further citations to show that Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is *best forgotten* as an incomplete, negative gloss on an accepted pleading standard; once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.") (emphasis added).

of the Tennessee Secondary School Athletic Association ("TSSAA"). (Id. at ¶ 40.) However, Haley alleges that CMCSS did not allow her to attend TSSAA meetings unless she did so "on her own personal time" and without "reimbursement or supplement." (Id. at ¶ 42.) Haley also alleges that CMCSS "subjected [her] to a moldy closet as her coach office." (Id. at ¶ 41.)

According to the Complaint, CMCSS removed Haley from the position of head wrestling coach in March 2016, after the completion of "a very good season."[2] (Id. at ¶¶ 35, 43.) Haley alleges that she repeatedly requested reinstatement, but CMCSS refused "to engage in any discussions, interviews, or restatement." (Id. at ¶ 44.) Haley alleges that she was replaced by a "less-qualified" male coach in August 2016, "in violation of [ ] school and [TSSAA] policies." (Id. at ¶ 37, 45.) Based upon these occurrences, Haley alleges that CMCSS failed "to provide female coaches with the same treatment and benefits as the male coaches" and failed "to provide equal athletic coaching instruction opportunities for female faculty." (Id. at ¶ 48.)

Haley also alleges that CMCSS has intentionally and consciously discriminated against female students at Northeast by failing to provide them with "treatment and benefits that are comparable to the treatment and benefits provided to male student athletes in areas including but not limited to: practice and competitive facilities, training facilities, locker rooms, coaches and coaching facilities, scheduling of games and practice times, publicity and funding." (Id. at ¶ 25.) The Complaint states that Haley "informed [CMCSS] that its actions constitute violations of Plaintiff's [ ] rights[,]" but "CMCSS has failed to remedy or address its violations." (Id. at ¶ 27.)

---

[2] The Complaint also alleges that Haley was removed as math department chair without "performance issues," but does not provide any additional detail (e.g., when or why). (See Doc. No. 1 at ¶ 44.) Haley does not mention this allegation in her briefing on the Motion.

3

III. Discussion

    A. Section 1983 Claim Pursuant to Equal Protection Clause

The Court of Appeals for the Sixth Circuit allows a constitutional claim to be brought under Section 1983 even if that claim runs parallel to a claim brought under an analogous statute on similar facts. See Bullington v. Bedford Cty., 905 F.3d 467, 472 (6th Cir. 2018) (collecting cases). This specifically includes caes involving alleged employment discrimination where a plaintiff advances a Section 1983 claim based on the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution either "concurrently with, or independent of, a Title VII violation." Day v. Wayne Cty. Bd. of Auditors, 749 F.2d 1199, 1204 (6th Cir. 1984); see also Russell v. Moore, 714 F. Supp. 883, 886 (M.D. Tenn. 1989) ("The plaintiff 'may sue her state government employer for violations of the Fourteenth Amendment through [Section] 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII.'") (quoting Trigg v. Fort Wayne Cmty. Schs., 766 F.2d 299, 301 (7th Cir. 1985) (explaining the Day decision)).[3] Here, Haley seeks to bring such a Section 1983 claim in parallel to her Title VII claim.[4]

CMCSS argues that Haley's Section 1983 claim must be dismissed as untimely under the relevant statute of limitations. When a motion to dismiss is made on the ground of a statute of limitations, the Court must decide whether "it is apparent from the face of the complaint that the limit for bringing the claim[s] has passed." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 520 (6th

---

[3] Section 1983 claims are also not precluded by a parallel Title IX claim. See Bullington, 905 F.3d at 472-73 (citing Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255-59 (2016)).

[4] The Court notes that CMCSS does not move to dismiss Haley's Title VII claim. Based on the Complaint, it is unclear whether Haley asserts a Title VII discrimination claim, retaliation claim, or both. See, e.g., Harker v. Utica Coll. of Syracuse Univ., 885 F. Supp. 378, 387-88 (N.D.N.Y. 1995) (in case brought by coach against college, explaining that plaintiff needed to properly explain and distinguish Title VII claims). The parties should appropriately address these issues in dispositive motion practice or pre-trial filings.

4

Cir. 2008) (alteration in original) (quoting Hoover v. Langston Equip. Assocs., Inc., 958 F.2d 742, 744 (6th Cir. 1992)). "The statute of limitations applicable to a [Section] 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the [Section] 1983 claim arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007). The Court of Appeals has specifically noted that this applicable limitations period in Tennessee is one year, based on Tennessee Code Annotated § 28–3–104(a). Howell v. Farris, 655 F. App'x 349, 351 (6th Cir. 2016) (citing Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000)). Here, all of the events alleged in the Complaint occurred in Tennessee. Accordingly, the statute of limitations for Haley's Section 1983 claim is one year.

Haley's only response is that her Section 1983 claim is saved by the four-year statute of limitations set forth in the federal "catch-all" provision of 28 U.S.C. § 1658(a). (Doc. No. 14 at 6-7.) That provision, however, is only relevant to claims made possible by a post-1990 enactment of Congress. Id.; see also Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) (explaining when an Act of Congress implicates Section 1658's four-year statute of limitations). Section 1983, however, is a law passed by the United States Congress in 1871, under the original moniker of the Enforcement Act of 1871 (also known as the Civil Rights Act of 1871). See 17 Stat. 13 (1871). It was the last of three "force bills" passed by the United States Congress during the Reconstruction Era to combat attacks, led in significant part by the Ku Klux Klan, upon the rights of African-Americans. See Monroe v. Pape, 365 U.S. 167, 174-75 (1961) ("This Act . . . was passed by a Congress that had the Klan particularly in mind. The debates are replete with references to the lawless conditions existing in the South in 1871. It was not the unavailability of state remedies but the failure of certain [s]tates to enforce the laws with an equal hand that furnished the powerful momentum behind this 'force bill.'"), overruled on other grounds by Monell v. Dep't of Soc. Servs.

5

of City of New York, 436 U.S. 658 (1978). Accordingly, Haley's Section 1983 claim is not entitled to a four-year statute of limitations.

Although the applicable time period is borrowed from state law, the date on which the statute of limitations begins to run in a Section 1983 action is a question of federal law. Eidson, 510 F.3d at 635. "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." Id. In determining when the cause of action accrues in Section 1983 actions, courts look to "what event should have alerted the typical lay person to protect his or her right." Howell, 655 F. App'x at 351 (quoting Eidson, 510 F.3d at 635). Haley alleges that she was removed as wrestling coach in March 2016. This very arguably was the day that Haley became aware of a need to protect her rights. But, giving Haley the benefit of the doubt, there is a later date by which she *certainly* had reason to know of her alleged injury. According to the Complaint, after being removed Haley sought reinstatement for several months, only to be stonewalled and, in August 2016, to be replaced by an unqualified male coach. At that time, Haley unquestionably had reason to know of her alleged injury and was alerted to the need to protect her rights. Accordingly, Haley was required to bring her Section 1983 claim within one year of her replacement as wrestling coach in August 2016. She did not file the Complaint, however, until April 27, 2018 – approximately 17 months later. (Doc. No. 1.) Haley's Section 1983 claim is therefore time-barred.

B.  Title IX Claims

When Congress enacted Title IX in 1972, it had two principal objectives in mind: "[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979). Title IX was enacted to supplement the ban on discrimination in the Civil Rights Act

of 1964, and it is designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding. Bonnell v. Lorenzo, 241 F.3d 800, 810 n.6 (6th Cir. 2001); Schaumleffel v. Muskingum Univ., Case No. 2:17-cv-463, 2018 WL 1173043, at *12 (S.D. Ohio Mar. 6, 2018). Title IX states that: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a). Although the statutory language makes no mention of athletics programs, the former U.S. Department of Health, Education and Welfare and its successor agency, the U.S. Department of Education, have interpreted Title IX to require schools to "provide equal athletic opportunity for members of both sexes." Biediger v. Quinnipiac Univ., 691 F.3d 85, 92 (2d Cir. 2012) (quoting 34 C.F.R. § 106.41(c)). To that end, Title IX requires that schools ensure gender equality among male and female athletes regarding the quality and quantity of facilities, uniforms, assignment and compensation of coaches, opportunity to receive coaching, provision of equipment, facilities, support services, and scheduling of games and practices. See 34 C.F.R. § 106.41(c). Title IX prohibits sexual harassment of employees and students, discrimination by a school system in the benefits, terms, and conditions of employment on the basis of employees' sex, and retaliation against employees for complaining about perceived gender inequities under the law. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005); see also The Rights of School Employee-Coaches Under Title VII and Title IX in Educational Athletic Programs, 32 ABA J. OF LABOR & EMP'T LAW, 229 (2017) (collecting cases). Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available. Klemencic v. Ohio St. Univ., 263 F.3d 504, 510 (6th Cir. 2001).

CMCSS argues for dismissal of Haley's separate Title IX claims for (1) disparate treatment of female student-athletes, on the ground of lack of standing, and (2) gender discrimination,[5] on the ground of statute of limitations. (See Doc. Nos. 9 at 3-6.) As discussed below, the Court concludes that Haley's Title IX claim is properly conceived as only a personal discrimination claim that is subject to the applicable statute of limitations.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve [her] grievance." Kowalski v. Tesmer, 543 U.S. 125, 128 (2004). Such an inquiry involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). First, "[t]o satisfy Article III's standing requirements, a plaintiff must show: '(1) [she] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 581 (6th Cir. 2016) (quoting Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 606-07 (6th Cir. 2007)). The Supreme Court has emphasized that the requirement that an injury-in-fact be "concrete and particularized" encompasses two distinct requirements. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992)). "A 'concrete' injury," on the other hand, "must be 'de facto'; that is, it must actually exist." Id. Second, a plaintiff must "address the alternative threshold question [of] whether [she has] standing to raise the rights of others." See Ruhrgas AG v. Marathon Oil Co.,

---

[5] Once again, the Complaint is not particularly clear as to whether this claim is one for discrimination, retaliation, or both. For the reasons discussed below, however, it does not matter. For ease of reference, the Court will refer to this as Haley's Title IX "discrimination claim."

8

526 U.S. 574, 585 (1999). A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499. An exception to this rule can only be found where a party asserting a right has a "close" relationship with the person who possesses the right, Kowalski, 543 U.S. at 567 (quoting Powers v. Ohio, 499 U.S. 400, 411 (1991)), and there is a "hindrance" to the third party's ability to protect his or her own interests. Id.

Accordingly, courts have generally found that Title IX claims concerning the treatment of students are appropriately brought by students themselves. See, e.g., Harris v. Shelby Cty. Schs., No. 17-2309-SHL-dkv, 2017 WL 3403813, at *3 (W.D. Tenn. May 12, 2017) (dismissing parent's Title IX claim because it was not "personal"). Haley relies upon Jackson v. Birmingham Board of Education for the proposition that coaches may bring Title IX claims on behalf of student-athletes. But that case is about whether school employees have standing to sue for retaliation against themselves, not for the disparate treatment of student-athletes. See Jackson, 544 U.S. at 180-81. While the Jackson Court observed that "teachers and coaches . . . are often in the best position to vindicate the rights of their students because they are better able to identify discrimination and bring it to the attention of administrators," it made this statement in the context of explaining why teachers and coaches had to be able to bring their *own* action under Title IX for discrimination or retaliation if *they* suffered after advocating for the rights of students. Id. at 181. Accordingly, when coaches and teachers bring Title IX claims, they typically bring a personal gender discrimination or retaliation claim, even where "inequities experienced by female athletes . . . may be factually relevant and central to the case," regardless of whether or not students also bring claims on behalf of themselves. Rights of School Employee-Coaches at 237 (collecting cases); see also, e.g., Miller v. Bd. of Regents of the Univ. of Minn., No. 15-cv-03740-RHK-LIB, 2015 WL 5721601 (D. Minn.

9

Sept. 28, 2015) (where complaint alleged in part disparities in treatment between male and female athletic teams in violation of Title IX, former coach plaintiffs brought only *personal* Title IX discrimination/retaliation claims); Harker, 885 F. Supp. at 391 (former coach asserted that *she* was discriminated against under Title IX for reasons including: the men's baseball team has better facilities, the male coaches had better opportunities; the women's teams had less physical resources, and female teams received less financial support); O'Connor v. Peru St. Coll., 718 F.2d 632, 642 n.8 (8th Cir. 1986) ("The facilities and supplies with which a teacher or coach is provided are clearly part of that teacher's conditions of employment and do not become less so because the same factors might also be raised in a discrimination claim by a third party, here the female athletes themselves. Claims of discriminatory employment conditions are cognizable under Title IX.") Here, Haley is seventeen months removed from her coaching position, and there is no suggestion that the student-athletes are in any way incapable of representing their own interests or protecting their own rights. Haley therefore does not have prudential standing to pursue an independent claim on behalf of female student-athletes at Northeast. Haley properly brings only a discrimination claim on her own behalf, albeit one that may be well-informed by allegations regarding CMCSS's unequal treatment of female athletes.

Turning to that discrimination claim, CMCSS contends that it must be dismissed as untimely under the relevant statute of limitations. Like Section 1983, Title IX does not contain its own statute of limitations, but the Court of Appeals has held that the applicable limitations period is, similarly, the same as applies to state personal injury claims, which is one year in Tennessee.[6]

---

[6] Haley briefly cites Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 465 (1975), for the proposition that the statute of limitations may be avoided because "considerations of state law may be displaced where inconsistent with federal policy underlying the cause of action under consideration." What she fails to mention, however, is that in that case the Supreme Court considered and rejected an argument that application of a state statute of limitation conflicted with

Lillard, 76 F.3d at 729; Doe v. Univ. of Tenn., 186 F. Supp. 3d 788, 808 (M.D. Tenn. 2016). The analysis concerning when the statute of limitations began to run is the same as above. Haley had reason to know of her alleged injury and was alerted to the need to protect her rights no later than August 2016. As the Court has explained, however, Haley did not file the Complaint until approximately 17 months later. (Doc. No. 1.)

The general rule is that courts in this circuit will not extend a statute of limitations "by even a single day." Graham–Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000). However, Haley briefly argues for two paths around the statute of limitations for her Title IX discrimination claim. Citing to a Pennsylvania district court decision and a twenty-year-old Tennessee district court case that has been superseded by intervening Court of Appeals precedent, Haley contends that she is entitled to the benefit of equitable tolling or application of the "continuing violations" doctrine. (Doc. No. 14 at 4-5.) But, "[h]aving borrowed the state's statute of limitations . . . , [the Court] appl[ies] the state's tolling statute, as long as the result is not inconsistent with federal law or policy." Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 845 (6th Cir. 2015) (citing Bishop v. Children's Ctr. for Developmental Enrichment, 618 F.3d 533, 537 (6th Cir. 2010). Haley "does not cite any [Tennessee] equitable-tolling rules, so [s]he has forfeited any argument [s]he might have had under those rules." Roberson v. Macnicol, 698 F. App'x 248, 250 (6th Cir. 2017).[7]

---

the remedial purpose of 42 U.S.C. § 1981, finding "no policy reason that excuse[d] petitioner's failure to take minimal steps necessary to preserve each claim independently." Id. Haley has articulated no valid reason why the state statute of limitations conflicts with the purposes of Title IX.

[7] Johnson and Roberson are Section 1983 cases. However, because the Court borrows the state statute of limitations for a Title IX claim in the same manner it does for a Section 1983 claim, the Court of Appeals' pronouncements apply with equal force.

11

Moreover, even if Haley could rely on federal tolling rules, her arguments would still fail. First, federal courts apply equitable tolling "sparingly." Graham-Humphreys, 209 F.3d at 560. "A plaintiff who fails to pursue her rights diligently is not eligible for tolling." Id. For equitable tolling, the Court considers five factors: "(1) the lack of notice of the filing requirement; (2) the lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. Bullington, 905 F.3d at 470 (citing Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187 (6th Cir. 2008)). Haley does not allege (or sufficiently explain in her brief) facts or conditions concerning any of these factors, nor does she offer any explanation as to how she was diligent or reasonable, or how CMCSS has not been prejudiced. In the response to the Motion, Haley merely states that CMCSS "misled her" regarding her cause of action. This conflates equitable tolling and fraudulent concealment. But it is no matter, because the Complaint contains no allegation that CMCSS engaged in fraudulent behavior or deceived Haley in a manner relevant to her filing of this action – or, frankly, to anything else – after August 2016. See Roberson, 698 F. App'x at 251 (plaintiff must specifically plead allegations of fraudulent concealment); see also Robinson v. Baptist Mem. Hosp., 464 S.W.3d 599, 609 (Tenn. Ct. App. 2014) (under Tennessee law, fraudulent concealment can only toll a statute of limitations when "the defendant has taken steps to prevent the plaintiff from discovering he or she was injured"). Rather, the Complaint alleges that Haley knew she had been treated inequitably by CMCSS when she was replaced by a less-qualified male coach in August 2016.

Regarding the continuing violations doctrine, courts are split on whether it even applies to Title IX claims: "[s]ome courts suggest is does," while "[o]thers suggest it doesn't." Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 566 (3d Cir. 2017). Our Court of Appeals has observed an

"extreme" reluctance to apply the doctrine outside of the Title VII context. Dibbern v. Univ. of Mich., No. 12-15632, 2016 WL 2894491, at *19 (E.D. Mich. May 18, 2016) (quoting LRL Props. v. Portage Metro. Housing Auth., 55 F.3d 1097, 1105 (6th Cir. 1995)). Accordingly, courts in this circuit and elsewhere have concluded that the doctrine indeed does not apply in Title IX cases. See id.; see also, e.g., Folkes v. New York Coll. of Osteopathic Med., 214 F. Supp. 2d 273, 288-91 (E.D.N.Y. 2002) (explaining that the application of the continuing violations theory in Title IX cases conflicts with the actual-notice standard set forth in Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998)). This Court agrees.

But even if the doctrine were available, Haley's allegations would not trigger it. In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that the doctrine applies to hostile environment claims under Title VII because such claims involve "repeated conduct" occurring over "a series of days or perhaps years, and in direct contrast to discrete acts." Id. at 115. The Morgan Court further explained that "discrete acts," including adverse employment events such as "termination, failure to promote, denial of transfer, or refusal to hire," are not actionable under a continuing violations theory if they are otherwise time-barred. Morgan, 536 U.S. at 113-14. The only acts that Haley specifically complains CMCSS directed at her in an identifiable time frame are (1) giving her a moldy office while she was coaching, (2) not reimbursing her for attending TSSAA meetings; (3) replacing her with a lesser-qualified, male coach, and (4) denying her reinstatement. These allegations are insufficient to trigger the doctrine; the first two are essentially *de minimis* and the latter two are "discrete acts" related to Haley's employment.[8] Further, to the extent that Haley makes other allegations regarding CMCSS's

---

[8] The allegation of being replaced as math department chair does not, on its face, involve gender discrimination because Haley does not allege any discriminatory motivation or even that she was replaced by a male. Nevertheless, it, too, would be a "discrete act."

noncompliance with Title IX *vis a vis* unequal treatment of female athletics programs or female student-athletes, such circumstances, while certainly relevant to Haley's claim, do not simply entitle her to a presumption of a "general" continuing violation. See, e.g., Bertrand v. Yellow Trans., Inc., No. 3:08-1123, 2009 WL 3169821, at *5 (M.D. Tenn. Sept. 30, 2009) (rejecting application of "continuing violations" doctrine to personal Title IX discrimination claim because "any claim [the p]laintiff had accrued when he was terminated and the fact that others may have been discriminated against after that date is irrelevant to [the p]laintiff's claims").

Haley's Title IX discrimination claim is therefore time-barred.

IV. Conclusion

For the foregoing reasons, CMCSS' Motion to Dismiss (Doc. No. 8) will be granted. To the extent Haley seeks to bring a Title IX claim on behalf of student-athletes, she does not have standing to do so and that purported claim will be dismissed. Haley's Section 1983 and Title IX discrimination claims will be dismissed because they are time-barred. This case will proceed on Haley's Title VII claim(s).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE